IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

ROBERT R. McCOY,                    )
                                    )
                Plaintiff,          )
                                    )
v.                                  )        No. 3:10-CV-209
                                    )
MICHAEL J. ASTRUE,                  )
Commissioner of Social Security,    )
                                    )
                Defendant.          )

## MEMORANDUM OPINION

This is an action for judicial review, pursuant to 42 U.S.C. § 405(g), of

defendant Commissioner's final decision denying plaintiff's claims for Supplemental

Security Income ("SSI") benefits. For the reasons set forth herein, defendant's motion for

summary judgment [doc. 27] will be granted, and plaintiff's motions for summary judgment

[docs. 11, 13] will be denied. The final decision of the Commissioner will be affirmed.

Also before the court is "Plaintiff's Rule 60 Motion to Vacate January 18, 2011

Order and to Enter Summary Judgment in Favor of Plaintiff" [doc. 24]. As will be explained

below, that motion will also be denied.

I.

*Background*

Plaintiff was born in 1953 and has a 6th grade education. [Tr. 29, 108].[1]
Plaintiff filed the present application on August 1, 2006, with an alleged onset date of
January 30, 2005. [Tr. 108]. Plaintiff claims to be disabled by hepatitis C, breathing
problems, back problems, diabetes, liver problems, high blood pressure, and high cholesterol.
[Tr. 126]. His application was denied initially and on reconsideration. Plaintiff then
requested a hearing, which took place before an Administrative Law Judge ("ALJ") on May
13, 2009.

In October 2009, the ALJ issued a decision denying benefits. Therein, it was
concluded that plaintiff suffers from "tobacco abuse, obesity, lumbago, osteoarthrosis,
chronic pain syndrome, and anxiety disorder," which were deemed severe impairments but
not equal, individually or in concert, to any impairment listed by the Commissioner. [Tr. 16,
19]. The ALJ further concluded that plaintiff retains the residual functional capacity
("RFC") for work at the medium level of exertion, limited by "no more than occasional
climbing, balancing, stooping, bending, crouching, crawling, and kneeling [, . . .] precluded
from work exposing him to dust, fumes, smoke, chemicals, noxious gases, and hazards [, .

_____

[1] The record contains a number of seemingly incongruous statements by plaintiff. Illustrative
are the representations regarding his general equivalency diploma ("GED"). Plaintiff "dropped out
of school in the [seventh] grade because he refused to attend," and he claims difficulty with reading,
writing, and spelling. [Tr. 29, 550]. He nonetheless purports to have obtained a GED at age 35 "by
pure accident" when he "just went down [the GED test form] and started checking answers, and I,
I, I passed somehow. I don't know how I done it." [Tr. 29, 550].

2

. . with] a limited, but satisfactory[,] ability to deal with the public." [Tr. 20]. Citing vocational expert ("VE") testimony, the ALJ determined that plaintiff remains able to perform his past relevant work. [Tr. 23, 57-58]. In the alternative, and again citing vocational expert testimony, the ALJ concluded that if plaintiff were instead limited to a range of light exertion there would be a significant number of jobs existing in the national economy that he could perform. [Tr. 23-24,58-59]. Plaintiff was accordingly ruled ineligible for benefits.

Plaintiff then sought review from the Commissioner's Appeals Council. Review was denied on March 18, 2010. [Tr. 1]. The ALJ's ruling therefore became the Commissioner's final decision. Through his timely complaint, plaintiff has properly brought his case before this court for review. *See* 42 U.S.C. § 405(g).

## II.

### *Relevant Medical Background*

Plaintiff apparently underwent three back surgeries in the 1980s. [Tr. 32, 370]. The alleged event that he feels has now rendered him disabled took place in January 2005 when he injured his back lifting a tire jack. [Tr. 31-32, 452]. Plaintiff contends that his condition causes constant back, hip, and left leg pain which he rates at seven or eight on a ten-point scale, elevating to unbearable "ten out of ten" pain "if I try to do anything" such as the mere act of walking. [Tr. 33, 147]. He is purportedly unable to tie his own shoes, sit or stand for more than 15 to 20 minutes at a time, get into a bathtub, or walk without a cane.

[Tr. 42-45, 126, 492]. He grocery shops at least monthly, drives, and cleans his apartment monthly. [Tr. 46, 50, 148].

Prior to the alleged January 2005 injury, an October 2003 MRI showed mild and small lumbar findings. [Tr. 370]. July 2003 lumbar imaging indicated "mild disc space narrowing." [Tr. 378].

In March 2005, orthopaedist Charles Gouffon noted a "not particularly large" herniation at L2. [Tr. 460]. In September 2005, a lumbar MRI showed multilevel degeneration of an unspecified degree but no apparent herniation or neural impingement. [Tr. 430]. Orthopaedist Merrill White examined plaintiff in August 2005. Straight leg testing brought about complaints of lumbar pain "with exaggerated pain behaviors of grunting and groaning." [Tr. 436]. In September 2005, Dr. White's examination indicated lumbar tenderness, very limited range of motion, and a limp on the left side. [Tr. 431-32]. November 2005 lumbar imaging showed "mild disc disease." [Tr. 470].

Plaintiff underwent a functional capacity evaluation ("FCE") on November 3, 2005. Testing indicated that plaintiff was capable of sedentary to light work. [Tr. 246]. Physical therapist Cecilia Verzosa noted,

> Overall test findings, in combination with clinical observations, suggest the presence of variable levels of physical effort on Mr. McCoy's behalf. In describing sub-maximal effort, this evaluator is by no means implying intent. Rather, it is simply stated that Mr. McCoy can do more physically at times than was demonstrated during this testing day. Any final vocational or rehabilitations decisions for Mr. McCoy should be made with this in mind.

4

> Overall test findings, in combination with clinical observations, suggest some minor inconsistency to the reliability/accuracy of Mr. McCoy's subjective reports of pain/limitation. . . . [I]t is simply stated that Mr. McCoy can do more at times than he currently states or perceives. While his subjective reports should not be disregarded, they should be considered within the context of such . . . findings.

[Tr. 245].

Plaintiff first visited with Dr. James Fox on December 23, 2005. Dr. Fox recorded numbness and weakness in the left leg, positive straight leg raise bilaterally, and forward flexion limited by pain. [Tr. 491-92]. He diagnosed probable left radiculopathy at L4-5 and "failed back syndrome." [Tr. 492]. Plaintiff next saw Dr. Fox on March 3, 2006. Scar tissue and left radicular pain were noted. [Tr. 486]. Following the next appointment on March 30, 2006, Dr. Fox addressed a letter "to whom it may concern" stating in material part,

> I am writing in regards to my patient, Robert McCoy. Mr. McCoy has been my patient since December 23, 2005. I am treating him for chronic low back pain sustained during a work related injury on January 12, 2005. Mr. McCoy has been unable to return to his previous employed position since the first time I saw him on December 23, 2005.

[Tr. 485]. On August 30, 2006, Dr. Fox's office wrote that plaintiff was doing okay with no problems. [Tr. 478].

At the Commissioner's request, Dr. Daniel Kan performed a consultative examination in November 2006. Dr. Kan noted mild lumbar tenderness, reduced range of motion at the hips, and positive bilateral straight leg raising. [Tr. 497]. Plaintiff's effort was deemed "fair." [Tr. 497]. Based on an impression of lumbosacral radiculopathy, self-reported hepatitis C, self-reported shortness of breath, self-reported diabetes, and self-

5

reported hypertension, Dr. Kan issued the following vocational predictions:

> With regards to work expectations on the basis of the previous history, physical finding and available records and without the full benefit of radiological studies and neurophysiological testing, it is *estimated* that the claimant *may not be able to* occasionally lift and/or carry any weights. He *may be able to* stand and/or walk for short periods of time and he *may be able to* sit for short periods of time.

[Tr. 497-98] (emphasis added).

Nonexamining Dr. John Fields completed a Physical RFC Assessment form in December 2006. Dr. Fields predicted that plaintiff can perform the full range of light exertion. [Tr. 500-03]. Dr. Fields found plaintiff's subjective allegations to be "not credible" due to inconsistencies with the objective record. [Tr. 506]. Dr. Fields deemed Dr. Kan's assessment "so vague as to be non-useable." [Tr. 505].

The record shows additional appointments with Dr. Fox's office from December 2006 through March 2009. On December 11, 2006, Dr. Joe Browder wrote that plaintiff "states that pain is not resolving; however, medical management allows him to deal with pain." [Tr. 546]. Dr. Fox repeated that observation on January 10, 2007. [Tr. 537]. In February 2007, nurse Brandy Bledsoe wrote that plaintiff was "doing well" with no "new problems or pain complaints" [Tr. 535], but the following month he again reported 8/10 pain to Dr. Fox. [Tr. 530-31].

In October 2007, nonexamining Dr. Michael Ryan completed a Physical RFC Assessment form. Dr. Ryan opined that plaintiff can perform medium exertion limited to no more than frequent postural activities, subject to "limited" far acuity. [Tr. 573-76]. Dr. Ryan

6

deemed plaintiff's complaints "partially credible." [Tr. 579]. He viewed Dr. Kan's assessment as "overly restrictive," "not fully supported," and "not establish[ing] specific limitations." [Tr. 578].

At his December 8, 2008, and January 6 and February 3, 2009 appointments with Dr. Fox, plaintiff claimed that he no longer smoked. [Tr. 633, 636, 640]. On December 8 and January 6, plaintiff's lumbar examination was normal and he no longer limped. [Tr. 636-37, 640-41]. He "continue[d] to be stable." [Tr. 638]. On February 3, 2009, Dr. Fox wrote, "Patient is doig [sic] well. He denies any side effects or new problems at this time. He continues to do well on current medication. He tries to be active around the house. He is stable at this point." [Tr. 634]. By the time of his March 31, 2009 appointment, plaintiff was again smoking. [Tr. 629].

## III.

### *Applicable Legal Standards*

This court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's decision. 42 U.S.C. § 405(g)*; Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The "substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Beavers v. Sec'y of Health, Educ. & Welfare*, 577 F.2d 383,

387 (6th Cir. 1978) (quoting *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 488 (1951)). In reviewing administrative decisions, the court must take care not to "abdicate [its] conventional judicial function," despite the narrow scope of review. *Universal Camera*, 340 U.S. at 490.

An individual is eligible for SSI on the basis of financial need and either age, blindness, or disability. *See* 42 U.S.C. § 1382(a). "Disability" is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B). Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). Plaintiffs bear the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.*

IV.

*Analysis*

Plaintiff's motions present a wealth of arguments in support of reversal or remand. Those issues, none of which have merit, will be addressed in turn below. Any issue that has not been specifically addressed by plaintiff has been waived. *See Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 490-91 (6th Cir. 2006).

A. <u>Severe Impairments</u>

As noted above, at step two of her sequential analysis the ALJ determined that plaintiff suffers from the "severe" impairments of "tobacco abuse, obesity, lumbago, osteoarthrosis, chronic pain syndrome, and anxiety disorder." [Tr. 16]. Plaintiff now argues that the ALJ erred in not finding that his alleged impairments of failed back syndrome and degenerative disc disease were also "severe." Presuming that these two impairments exist and are severe, the argument is without merit.

9

We find it unnecessary to decide this question. According to the regulations, upon determining that a claimant has one severe impairment, the [Commissioner] must continue with the remaining steps in his disability evaluation as outlined above. In the instant case, the [Commissioner] found that [plaintiff] suffered from the severe impairment[s] of [tobacco abuse, obesity, lumbago, osteoarthrosis, chronic pain syndrome, and anxiety disorder]. Accordingly, the [Commissioner] continued with the remaining steps in his disability determination. Since the [Commissioner] properly could consider claimant's [alleged failed back syndrome and degenerative disc disease] in determining whether claimant retained sufficient residual functional capacity to allow him to perform substantial gainful activity, the [Commissioner's] failure to find that claimant's [alleged failed back syndrome and degenerative disc disease] constituted a severe impairment could not constitute reversible error.

*Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987).

## B. <u>Credibility</u>

In her written decision, the ALJ found that plaintiff's subjective allegations are not entirely credible. [Tr. 22]. Plaintiff argues that the ALJ's position: is inadequately supported; disregards his "credible and consistent statements"; and mischaracterizes his testimony. Plaintiff is incorrect.

As for the allegations of mischaracterization of his testimony, plaintiff cites the following sentence from the ALJ's decision: "He reported that he watches television, lives alone, drives, prepares simple meals, shops for groceries, and attends to his personal needs." [Tr. 22]. According to plaintiff, to say that he "shops for groceries" is inconsistent with the record, and he "does not prepare simple meals; he microwaves pre-made food, such as 'hot

10

pockets.'"[2] However, on at least two occasions plaintiff told the Commissioner that he shops for groceries. [Tr. 46, 148]. For the ALJ to find that plaintiff "shops for groceries" based on plaintiff's admissions that he shops for groceries can hardly be called error.

As for *what* plaintiff cooks, Dr. Fox's file contains plaintiff's self-reports of "cook[ing] a little" [Tr. 530], and "cook[ing]" [Tr. 519]. Dr. Abraham Brietstein recorded plaintiff's self-report that he "prepares simple meals *including* microwavable dinners." [Tr. 551] (emphasis added). Based again on plaintiff's own admissions, substantial evidence supports the finding that plaintiff cooks something other than microwave dinners.

Turning to plaintiff's contention that the adverse credibility finding was inadequately supported, the ALJ in fact cited numerous supporting points:

> 1. Plaintiff continues to smoke despite his allegedly disabling respiratory complaints and despite physician instructions to the contrary. [Tr. 17, 19].
>
> 2. The medical record indicates drug-seeking behavior [Tr. 17], which has been noted by Dr. Stephen Gantte. [Tr. 285, 287].
>
> 3. The medical record indicates that plaintiff is noncompliant with medications and physician instructions [Tr. 17], consistent with Dr. Gantte's descriptions of a history of "severe" and "gross" noncompliance. [Tr. 232, 287, 291].
>
> 4. Plaintiff was noted to have given submaximal effort on examinations. [Tr. 17, 21]. Dr. Kan deemed plaintiff's effort only "fair" [Tr. 497], and Ms. Verzosa believed that plaintiff can do more than his FCE indicated. [Tr. 245].

---

[2] Plaintiff testified that he eats only microwaveable meals and does no "actual cooking." [Tr. 35, 50].

5. Plaintiff's subjective complaints "are disproportionate to the objective clinical and diagnostic medical evidence." [Tr. 20-21]. That finding is consistent with Dr. Gantte's August and December 2005 notations that, "Pain appears out of proportion to exam." [Tr. 231, 285]. In December 2005, Dr. Gantte further noted that plaintiff "rate[d] his pain 8/10 in his lower back" while simultaneously "making jokes and talking poorly about the state of marriage and his three 'ex-wives.'" [Tr. 285]. In August 2005, Dr. White observed that straight leg testing brought about complaints of lumbar pain "with exaggerated pain behaviors of grunting and groaning." [Tr. 436].

These observations by the ALJ are supported by the medical record and provide substantial evidentiary support for her conclusion that plaintiff's subjective complaints are not entirely credible.

To further flesh out the point, the court notes that plaintiff testified regarding his purported breathing difficulties as follows:

> I have problem breathing especially, especially at night. I mean, and when the, when the weather gets warm, you know, when it starts getting warm, I get to where I can't breathe hardly at all. But, and then at night when I lay down and go to sleep, it's just like I'm smothering and I, and I can't sleep. I mean, I can't go to sleep having it . . . . And I'm just, I lay in bed thinking I'm going to die.

[Tr. 34]. Plaintiff also testified that if "I try to walk a half-a-block, I go to gasping for breath and I have to sit down. . . . [A]ny time I exert myself at all I go to, you know, kind of gasping for breath." [Tr. 36-37].

Doctors Gantte, Becker, White, and Long have instructed plaintiff to stop smoking, specifically advising that doing so would be beneficial in reducing his alleged respiratory, esophageal, coronary, and pain complaints. [Tr. 229-30, 286-87, 290-91, 294, 298, 300, 303, 307, 311-13, 323, 325-26, 330, 454]. To Dr. Gantte in August 2005, plaintiff

12

himself directly related his respiratory complaints to smoking. [Tr. 292]. Inexplicably however, he continues to generally smoke two packs of cigarettes per day. [Tr. 231, 282, 305, 484, 487, 544, 546]. That fact is completely inconsistent with the severe degree of limitation alleged. *See Sias v. Sec'y of Health & Human Servs.*, 861 F.2d 475, 480 (6th Cir. 1988) ("The claimant's style of life is not consistent with that of a person who suffers from [the limitations alleged].").

> The Social Security Act did not repeal the principle of individual responsibility. Each of us faces myriads of choices in life, and the choices we make, whether we like it or not, have consequences. If the claimant in this case chooses to drive himself to an early grave, that is his privilege – but if he is not truly disabled, he has no right to require those who pay social security taxes to help underwrite the cost of his ride.

*Id.*[3]

On a similar note, Doctors Gantte, Becker, and Long have instructed plaintiff eat a healthy diet and lose weight, specifically advising that doing so would be beneficial in reducing his obesity, hyperlipidemia, hypertension, esophageal complaints, diabetes, and back pain. [Tr. 229, 232-33, 286, 293-94, 298, 300, 307, 311-12, 323, 325]. Plaintiff, however, has "not seem[ed] very receptive to this" and "[d]oes not think he eats very much." [Tr. 323]. Dr. Gantte has disagreed, noting: "plenty of room for dietary improvement"; "high fat/high carb diet and eats one large meal per day"; "unfortunately, he will eat large meals"; "He does not follow a very prudent diet and eats lots of fast food and late at night as well";

---

[3] Plaintiff will not even comply with physician instructions to use a seat belt or take a flu shot or hepatitis B vaccination. [Tr. 231, 233, 282, 287, 291, 294, 305, 307, 311, 329].

"He eats late at night and sleeps on a meal"; and, "He has a very poor diet." [Tr. 229, 231, 286, 292-93, 299, 306]. To date, plaintiff's only compliance effort in this regard appears to have been to shift downward from six to ten sodas per day to six to ten low calorie sodas per day. [Tr. 231, 285].

As for physical rehabilitation and exercise, physical therapist Verzosa recommended reconditioning. [Tr. 246]. Dr. Gantte has engaged in "extensive . . . exercise education." [Tr. 233, 298]. Drs. Becker and Long have also recommended exercise. [Tr. 323, 325]. There is no evidence of compliance. Instead, as observed by Dr. Becker, there is the "distinct impression that he would use pharmacotherapy rather than make any dietary or lifestyle changes." [Tr. 324]. Also, Dr. Gantte has recommended good back hygiene, "which is not followed." [Tr. 287].

Next, as referenced earlier in this opinion, plaintiff testified that he experiences pain "[a]bout 24 hours a day." [Tr. 33]. He further stated under oath,

> [I]f I try to do, anytime I try to do anything it gets worser. Usually it rides around area of seven and an eight. On a one to ten scale it'll ride at seven to eight with me taking the pain medicine. Okay, and then *if I try to do anything*, it jumps all the way up to ten. *I mean, just walking, I can't bear it no more.*

[Tr. 33] (emphasis added). Plaintiff has similarly told the Commissioner that he "can't do anything any more since I hurt my self." [Tr. 148]. Curiously, however, plaintiff has on multiple occasions (postdating his alleged disability onset date) sought out the drug Viagra regarding "a lady 30 years younger than him." [Tr. 297-98, 632]. *See Sias*, 861 F.2d at 480 ("The claimant's style of life is not consistent with that of a person who suffers from [the

14

limitations alleged].").

Additional inconsistencies are present in the record. Plaintiff testified that he uses only paper plates and does no dishwashing [Tr. 35, 50], yet Dr. Fox's file contains self-reports of "wash[ing] dishes and cook[ing] a little" [Tr. 530], "cook[ing] and wash[ing] dishes" [Tr. 519], and "do[ing] the dishes." [Tr. 514, 516]. Plaintiff testified that he suffers from arthritis and loss of strength in his hands [Tr. 52-53], but during Dr. Browder's December 2006 examination both "hands were examined. There is no pain, laxity or crepitus appreciated. There was full range of motion and good stability." [Tr. 545]. Similarly, Dr. Fox's December 8, 2008, and January 6, 2009 examinations of the hands were entirely unremarkable. [Tr. 637, 641].

Plaintiff claims to be unable to sit for more than 15 to 20 minutes, but at his initial field office interview with the Commissioner he was noted to have sat in a chair for more than an hour [Tr. 123], and in June 2007 he told Dr. Brietstein that he sits on his porch much of the day. [Tr. 551]. Plaintiff claims to live on only government-provided housing and food stamps [Tr. 35; doc. 1, p.1], yet somehow he has the resources to obtain two packs of cigarettes per day, six to ten sodas daily, and "lots of fast food." Plaintiff testified that he is unable to afford necessary medications [Tr. 41], but he can afford to smoke. *See Sias*, 861 F.2d at 480 (judicially noticing the monetary cost of smoking compared to the monetary cost of the claimant's allegedly unaffordable medical care).

As should by now be apparent, substantial evidence supports the ALJ's finding that plaintiff's subjective complaints are less than reliable. Plaintiff's contention that the ALJ disregarded his "credible and consistent statements" is clearly without merit.

## C. Treating and Examining Physician Opinions

Next, plaintiff complains that the ALJ erred in relying on the opinion of nonexamining Dr. Ryan instead of "the consistent opinions of the treating physicians, including Drs. Gouffon, White, Becker and Gantte, as well as consultative physician Dr. Kan." The court first notes that plaintiff has not directed the court's attention to any vocational opinion offered by Drs. Gouffon, White, Becker, or Gantte, and any such issue is thus waived. *See Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 490-91 (6th Cir. 2006); *United States v. Cole*, 359 F.3d 420, 428 n.13 (6th Cir. 2004) (citation omitted) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed [argumentation], are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.").

Plaintiff does specify opinion evidence from physical therapist Verzosa and Drs. Fox and Kan which he feels should have been adopted by the ALJ. In March 2006, after three appointments, Dr. Fox wrote "to whom it may concern" that plaintiff "has been unable to return to his previous employed position since the first time I saw him on December 23, 2005." [Tr. 485]. However, as noted by the ALJ [Tr. 21], mere statements that a claimant is "disabled" or "unable to work" are unavailing. The ultimate issue of disability is reserved

16

to the Commissioner, not the medical provider. *See* 20 C.F.R. § 416.927(e)(1). Further, as noted by the ALJ [Tr. 18, 21], much of Dr. Fox's subsequent treatment notes (as cited at pages five through seven of this opinion) contain observations and objective findings inconsistent with the earlier severe opinion offered in March 2006. It would further appear that Dr. Fox's letter was based at least in part on plaintiff's unreliable self-reporting.

Turning to the views of Dr. Kan (who opined that plaintiff may or may not have certain limitations), the ALJ explained [Tr. 21] that she was rejecting those views as vague, unsupported, and unduly-based on plaintiff's self-reporting. The ALJ's reasoning was consistent with the views of Dr. Ryan [Tr. 578] and Dr. Fields [Tr. 505], and in the undersigned's opinion was correct. Dr. Kan received only "fair" effort from the plaintiff and offered his opinion only "on the basis of the [subjectively-reported] history, physical finding and available records and without the full benefit of radiological studies and neurophysiological testing." [Tr. 498]. Dr. Kan only "estimated" that plaintiff "may" or "may not" have certain abilities. Dr. Fields correctly deemed that assessment "so vague as to be non-useable." [Tr. 505].[4] The ALJ sufficiently explained her rejection of Dr. Kan's assessment.

As for physical therapist Verzosa, whose FCE suggested that plaintiff is capable of no more than sedentary-to-light work, the ALJ rejected that source's opinion [Tr. 17, 21] based on the submaximal effort given by plaintiff during testing. Regardless of

---

[4] Also, plaintiff himself complained that Dr. Kan's examination was superficial. [Tr. 74].

whether or not plaintiff was intentionally malingering, Ms. Verzosa wrote that he "can do more physically at times than was demonstrated during this testing day. Any final vocational or rehabilitation decisions for Mr. McCoy should be made with this in mind." [Tr. 245]. Clearly, the ALJ cited a valid basis for rejecting Ms. Verzosa's opinion.

The ALJ instead found an RFC most consistent with the opinions of nonexamining Dr. Ryan. The ALJ explained that he found Dr. Ryan's assessment to be "more than consistent with the medical evidence of record and the claimant's hearing presentation." [Tr. 22]. In this case, the ALJ considered the conflicting opinions, adopted the one she deemed most accurate, and explained why. An ALJ may credit the views of a nonexamining physician over those of treating and examining doctors where the nonexaminer's opinion is better supported by the objective evidence and more consistent with the record as a whole. *See Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 652 (6th Cir. 2006). For the reasons discussed immediately above, such is the case here.

Perhaps another fact-finder could have reached a different conclusion in this case, but that is not the standard of review binding this court. "The main thrust of plaintiff's argument can be summarized in one sentence: '[S]ubstantial evidence contradicts the [Commissioner's] findings that Plaintiff has the residual functional capacity to return to [his] past relevant work.' While this may indeed be true, it is also true that substantial evidence supports the [Commissioner's] finding." *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir.1993). This court will not reverse a decision of the Commissioner

merely because a reasonable mind could have reached a different conclusion. *See, e.g., Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). Under substantial evidence review, there was no error in the ALJ's treatment of the various source opinions.

## D. Listing § 1.04

Next, and with minimal developed argumentation, plaintiff contends that his back condition should have been found to meet or equal the Commissioner's § 1.04 listing which relates to:

Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:

A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness [sic]) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

or

B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;

or

C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively . . . .

19

20 CFR Pt. 404, Subpt. P, App. 1, § 1.04

As can be seen, to meet any subsection of listing 1.04 requires multiple, specific, objective findings. Plaintiff has made no effort to cite such findings, and the issue of "meeting" listing 1.04 is thus waived. *Cole*, 359 F.3d at 428 n.13.

Plaintiff's suggestion that his condition is somehow *equivalent to* listing 1.04 fares no better. Plaintiff cites his prior back surgeries, "documented radicular findings," a positive straight raise test, and various subjective complaints. However, the record as discussed above shows that doctors have generally described plaintiff's back condition as mild, and plaintiff's subjective reporting appears dubious at best. Under no imaginable interpretation of the record could this court conclude that plaintiff has carried his step three burden of showing that his condition meets or equals the severity contemplated by impairment listing 1.04.

## E. <u>Step 5</u>

Lastly, plaintiff's dispositive briefing appears to argue that the ALJ's decision was "directly contrary to" the VE's testimony. Plaintiff specifically cites four responses by the VE. [Tr. 58, 60-61, 63]. However, each of these statements was in answer to a hypothetical RFC *different than* the one found by the ALJ. As discussed above, the ALJ reasonably found and explained her chosen RFC (a range of medium exertion), as synthesized from the many strains of evidence before her. None of the VE testimony cited by plaintiff would indicate that a claimant with that RFC could not return to plaintiff's prior

work.

## F. Rule 60 Motion

The court's attention now turns to "Plaintiff's Rule 60 Motion to Vacate January 18, 2011 Order and to Enter Summary Judgment in Favor of Plaintiff" [doc. 24]. A review of the procedural history of this case explains why that motion must be denied.

The Commissioner answered plaintiff's complaint and filed the administrative transcript on July 14, 2010. [Docs. 7, 8]. As is its practice once an answer and transcript are filed in a Social Security appeal, the court entered on July 15, 2010, an order setting the briefing schedule for this case. [Doc. 10]. Plaintiff's motion and brief were to be filed within 45 days of the entry of that order, and the Commissioner's motion and briefing were due within 45 days after plaintiff's.

Plaintiff submitted his summary judgment motion and brief on August 30, 2010. [Docs. 11, 12]. On October 7, 2010, plaintiff then filed an amended motion and brief. [Docs. 13, 14]. On October 14, 2010, the Commissioner moved for an extension of time to make his filings, citing the need for additional time to consider plaintiff's untimely second summary judgment motion which had been filed without leave of court. [Doc. 15]. Plaintiff opposed that request, arguing that his amended motion did not alter the substantive issues pending before the court and, thus, the Commissioner should be required to file his motion that day. [Doc. 17]. In hindsight, it appears largely true that plaintiff's amended motion did not really change the issues before the court. However, in the moment, the Commissioner

21

was entitled to sufficient time to verify that fact for himself. Accordingly, the court granted

the Commissioner's motion for extension of time, explaining in material part,

> . . . Plaintiff's recent filing was done without leave of court and, in addition,
> was untimely under the briefing schedule set by the court [doc. 10].
>
> In the interest of judicial economy and in light of the updated information
> provided in plaintiff's amendment, the court will not *sua sponte* strike the
> amended motion. Nonetheless, the defendant is entitled to additional time to
> respond.

[Doc. 16]. The Commissioner was given until November 17, 2010, to file his dispositive

motion and brief.

On the day that the Commissioner's filings were due, plaintiff *yet again* made

an untimely filing without leave of court, this time in the form of an amended complaint.

[Tr. 20]. The timing of plaintiff's unapproved filings suggests a degree of gamesmanship.

Moreover, plaintiff's shotgun filings understandably left the Commissioner unsure how to

proceed. Rather than submitting a dispositive motion regarding the original complaint on the

same day that an amended complaint had been filed, the Commissioner instead presumed

(again, quite understandably) that the filing of the amended complaint preempted the existing

briefing schedule. The Commissioner filed an answer and transcript in response to the

amended complaint within two weeks, on December 1, 2010. [Docs. 21, 22].

By that point, the case was in an unusual procedural posture. At the risk of

overusing the term "quite understandably," quite understandably no renewed briefing

schedule was immediately issued by the court setting a deadline for the filing of the

Commissioner's dispositive motion. The court's docket is crowded with criminal and civil cases other than the one at bar, each with their own motions and hearings, and plaintiff has only himself to blame (*via* his unauthorized amended filings) for any temporarily unnoticed procedural confusion in this case.

Concerned and uncertain of how to proceed in the absence of a briefing schedule, defense counsel contacted the court in mid-January 2011. On January 18, 2011, the court entered an order clarifying that the Commissioner's motion and brief were due by March 1, 2011. [Doc. 23].

On January 26, 2011, plaintiff filed the instant motion. Therein, he argues that the January 18 order unfairly gave the defense a second extension of time without good cause, thereby prejudicing his case. Plaintiff is again reminded, however, that the court twice gave *him* leniency in permitting two untimely and unapproved amended filings. It was those very filings (of dubious timing) by plaintiff that established the need and the "good cause" for the court's January 18 order. This case was in a confusing posture, and that confusion was created by plaintiff. Needing guidance, defense counsel contacted the court and, in response, the court's January 18 order put the case back on track. There was good cause for that ruling, and plaintiff's suggestion to the contrary is **not** well-taken.

Further, even if the court were to strike the defendant's dispositive motion and briefing, the end result today would be the same. For the reasons discussed herein, plaintiff's dispositive motion would be denied with or without the Commissioner's input. "Plaintiff's

23

Rule 60 Motion to Vacate January 18, 2011 Order and to Enter Summary Judgment in Favor

of Plaintiff" will be denied.

V.

*Conclusion*

The final decision of the Commissioner was supported by substantial evidence.

That decision will be affirmed, and an order consistent with this opinion will be entered.


ENTER:


_____s/ Leon Jordan_____
United States District Judge

24